UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 4461 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| ROBIN ZAHRAN and ABBAS ZAHRAN, as Trustee of the 5457 Bay Shore Drive Trust Dated February 5, 2003, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

On July 19, 2010, Bank of America, N.A., filed this action against Robin Zahran, individually, and Abbas Zahran, as Trustee of the 5457 Bay Shore Drive Trust Dated February 5, 2003. The Bank alleges that the Zahrans defaulted on a promissory note, and seeks to recover $514,747 in principal and interest, plus various fees and costs.

This action is the second involving the Zahrans and the Bank. In November 2009, the Zahrans sued the Bank in the Circuit Court of Cook County, Illinois, in a case styled *Zahran v. Bank of Am., N.A.*, 09 CH 20059. The Zahrans claim there that the Bank erroneously overcharged them interest and that, to remedy its error, offered in March 2009 to reduce the promissory note's principal amount to $300,000 (from approximately $500,000) and to institute a new fixed interest rate of 3.75%. The Zahrans allege that in April 2009 they accepted the Bank's offer and sent payment of $2,405 under the new terms. They charge that the Bank, after accepting the payment and cashing their check, reversed course in May 2009, returning the $2,405 and demanding that the Zahrans pay $45,945.67 immediately. The Zahrans seek specific

performance of the alleged modified loan agreement and, alternatively, damages for breach of contract. Among the Bank's affirmative defenses is this one: "Bank of America is entitled to setoff the amounts due it by [the Zahrans] against the amounts, if any, which [the Zahrans] may recover."

Before the court is the Zahrans' motion to dismiss or stay the federal case in light of the ongoing state litigation. Without expressly saying so, the motion invokes the *Colorado River* abstention doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The doctrine provides that "a federal court may stay or dismiss a suit in exceptional circumstances when there is a concurrent state proceeding and the stay or dismissal would promote 'wise judicial administration.'" *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992) (quoting *Colorado River*, 424 U.S. at 818). The Supreme Court "has cautioned that abstention is appropriate only in 'exceptional circumstances,' and has also emphasized that federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'" *AXA Corporate Solutions v. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (quoting *Colorado River*, 424 U.S. at 813, 817). In determining whether abstention is appropriate, a court's task is "not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (internal quotation marks omitted).

The *Colorado River* analysis has two steps. First, the court "inquire[s] whether the concurrent state and federal proceedings are parallel." *Caminiti*, 962 F.2d at 700. If so, the

court then consults ten non-exclusive factors to determine whether the circumstances are exceptional enough to warrant abstention. *Id*. at 701.

### A. Whether the State and Federal Proceedings Are Parallel

State and federal proceedings need not be identical to be parallel. Rather, proceedings are parallel "when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752 (7th Cir. 2006) (internal quotation marks omitted). Put another way, "[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state court] litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal quotation marks omitted). "[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction." *Id*. at 520.

Here, the state and federal proceedings involve the same parties—Bank of America and the Zahrans. The issues being litigated are substantially the same as well. In the state case, the Zahrans allege that the parties agreed to modify the promissory note and that the Bank breached the modified note; the Bank answers that there was no such modification or that the modification was invalid, and therefore that the original promissory note remains intact, enforceable and due. In the federal case, Bank of America alleges that the Zahrans breached the original promissory note, which remains intact, enforceable and due; if the case proceeds, the Zahrans undoubtedly will answer that the original promissory note was modified and that the Bank breached the modified note. In addition to turning on the same legal issues, both cases "will be resolved largely by reference to the same evidence." *Tyrer*, 456 F.3d at 752-53.

Finally, resolution of the state court litigation will dispose of all claims presented in the federal case. Judgment for the Zahrans in the state case would entail a judicial finding that the original promissory note was modified; such a judgment would have preclusive effect in the federal case, necessarily defeating the Bank's claim that the Zahrans defaulted on the original note. Judgment for Bank of America in the state case would entail a judicial finding that the original promissory note was *not* modified; such a judgment also would have preclusive effect in the federal case, necessarily defeating what appears to be the Zahrans' only defense to the Bank's claim that they defaulted on the note. *See Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir. 1988).

Given the foregoing, the state and federal proceedings are parallel for purposes of *Colorado River*. Other courts have reached the same conclusion in closely analogous circumstances. *See Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 136-37 (3d Cir. 1988) (issuing stay under *Colorado River* where debtor had filed state court action to cancel a note, and lender filed a federal action to collect on the note); *Fidelity Fed. Bank v. Larken Motel Co.*, 764 F. Supp. 1014, 1016-17 (E.D. Pa. 1991) (same); *see also Day*, 862 F.2d at 656 ("The overriding subject matter of the state court litigation is the cluster of rights and obligations of [the parties] to each other … . Where the validity, enforceability and interpretation of a contract are at issue in both federal and state courts … entry of a stay does not under *Colorado River* constitute an abuse of discretion.").

The principal case cited by Bank of America, *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584 (7th Cir. 2005), does not counsel a different result. *TruServ* involved a dispute between a hardware store (Flegles) and its wholesaler (TruServ). *Id.* at 587. In the state case, Flegles alleged that TruServ's material misrepresentations led Flegles to expand its operations, and also

that TruServ fraudulently induced it to sign a membership agreement with TruServ. *Id.* at 592. The jury in the state case found for Flegles, awarding it $1.3 million. In the federal case, TruServ alleged that Flegles failed to pay TruServ for various goods and services it received from TruServ, seeking the amounts owed from Flegles itself and also from one of Flegles's owners pursuant to a personal guaranty that guaranteed payment of the store's debt. *Ibid.*

The district court declined to abstain, and the Seventh Circuit affirmed on the ground that the state and federal proceedings were not parallel. To support its ruling, the Seventh Circuit pointed to two crucial differences between the federal and state litigation. *Id*. at 591-93. First, the Seventh Circuit noted that "because TruServ did not raise its collection claims in the state court, the jury did not decide whether the amount Flegles owed for the goods and services it received from TruServ should be subtracted—in part or in full—from the compensatory damages award." *Id*. at 592. Second, the court observed that "the state court did not consider the enforceability of [the store owner's] personal guaranty because [she] was not a party to the state court lawsuit." *Ibid*.

Neither difference is present here. First, in the state case, Bank of America's pleading seeks to "setoff the amounts due to it by [the Zahrans] against the amounts, if any, which [the Zahrans] may recover." While the Bank styles this request as an affirmative defense, Illinois law considers "setoff" to be a counterclaim. *See* 735 ILCS 5/2-608(a) ("Any claim by one or more defendants against one or more plaintiffs … , whether in the nature of setoff, recoupment, cross claim or otherwise, … may be pleaded as a cross claim in any action, and when so pleaded shall be called a counterclaim."); *compare* 735 ILCS 5/2-613(d) (not mentioning "setoff" in listing affirmative defenses). Whether styled as a counterclaim or an affirmative defense, the Bank's setoff request is *precisely* what TruServ did not assert in its state case. Second, unlike in

-5-

*TruServ*, the federal litigation here does not involve the enforceability of a personal guaranty. *See also Fofi Hotel Co., Inc. v. Davfra Corp.*, 846 F. Supp. 1345, 1351 (N.D. Ill. 1994) (two actions not parallel where "the federal action involved not only the validity, enforceability and breach of the promissory note but also the validity, enforceability and breach of the guaranty whereas the [state] action only involves the validity, enforceability and breach of the promissory note").

For these reasons, *TruServ* is distinguishable, and the state and federal proceedings here are parallel within the meaning of the *Colorado River* doctrine.

### B. The *Colorado River* Factors

The next step in the *Colorado River* analysis requires examining and balancing the ten non-exclusive factors identified by the Seventh Circuit, which are:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer*, 456 F.3d at 754. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-19; *see also Tyrer*, 456 F.3d at 754.

*1. Whether the state has assumed jurisdiction over property.* The state court has not assumed jurisdiction over property, so this factor weighs against abstention.

*2. The inconvenience of the federal forum.* The federal forum is not inconvenient, seeing as the Zahrans brought their state court suit in Cook County, so this factor weighs against abstention as well.

*3. The desirability of avoiding piecemeal litigation.* "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day*, 862 F.2d at 659. Here, because the federal and state actions involve the same parties and the same factual and legal issues, proceeding simultaneously in both forums would risk "duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue." *Caminiti*, 962 F.2d at 701. Simultaneous proceedings also would create incentives for one or the other party to attempt to delay proceedings in one forum should the other appear more favorable. *See ibid.*; *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989). This factor strongly favors abstention.

*4. The order in which jurisdiction was obtained by the concurrent fora.* This factor favors abstention, as the Zahrans filed the state case eight months before the Bank filed this federal case. See *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 697 (7th Cir. 1985) (state case filed five months before federal case).

*5. The source of the governing law, state or federal.* The source of the governing law here is state law, which favors abstention. *See J.I.K. Realty Co., Inc. v. Steward*, 1989 WL 165114, at *6 (N.D. Ill. Dec. 28, 1989) ("the absence of federal law issues removes one countervailing factor which might otherwise override the concerns of avoiding piecemeal litigation").

*6. The adequacy of state-court action to protect the federal plaintiff's rights.* Bank of America's contrary suggestion notwithstanding, the state court is eminently competent to decide

whether (as the Bank claims) the original promissory note remains in effect or (as the Zahrans claim) the original note was modified. Such issues being standard state court fare, this factor favors abstention.

*7. The relative progress of state and federal proceedings.* Here, there was an "absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to [abstain]." *Colorado River*, 424 U.S. at 820. The state court action, by contrast, is in the midst of discovery. Because the state case is further along than the federal case, this factor favors abstention. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21. It is true that the Bank very recently filed a summary judgment motion, but if the motion were considered, it either would be denied due to material factual disputes over whether the original promissory note was superseded, or, at a minimum, would be deferred under Fed. R. Civ. P. 56(d) to permit the Zahrans to take discovery on whether the original note was superseded—discovery already commenced in the state action.

*8. The presence or absence of concurrent jurisdiction.* The state court has concurrent jurisdiction over the Bank's federal court claim, which sounds in state law. *Compare Caminiti*, 962 F.2d at 702 (where state court did not have jurisdiction to hear federal court claim). This factor favors abstention.

*9. The availability of removal.* Because the state court parties are diverse (the Zahrans are citizens of Illinois and New York, while the Bank of America is a citizen of North Carolina), the state court defendant (Bank of America) is not a citizen of Illinois, and the amount in controversy exceeds $75,000 (the Zahrans seek damages of $250,000), the state case could have been removed to federal court. *See* 28 U.S.C. § 1441(a), (b). For reasons unexplained, Bank of America failed to remove, and the time for doing so has expired. *See* 28 U.S.C. § 1446(b). This

factor heavily favors abstention, as it appears that the Bank filed this action to obtain the federal forum it could have, and probably should have, obtained through removal. *See Microsoftware Computer Sys., Inc. v. Ontel, Inc.*, 686 F.2d 531, 537 (7th Cir. 1982) ("any interest MCS had in a federal forum could have been satisfied by removing the one action instead of creating a second"), *overruled on other grounds*, *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988).

    10. *The vexatious or contrived nature of the federal claims*. Without impugning the Bank's motives, because the Bank's federal court claim essentially duplicates its "setoff" request in state court, the federal suit is vexatious and contrived. *See Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) (where federal case filed several months after state case, holding that "[w]ithout presuming Interstate's motives, we see no reason why all claims and all parties could not have been, and still could not be, part of one suit").

    In sum, eight of the ten *Colorado River* factors—particularly the third, fourth and ninth factors—favor abstention and provide the "exceptional circumstances" necessary to abstain. The only remaining question is whether this action should be dismissed or stayed. The Seventh Circuit repeatedly has held that *Colorado River* should be effectuated through a stay, not dismissal. *See Selmon v. Portsmouth Drive Condo. Ass'n* , 89 F.3d 406, 409-10 (7th Cir. 1996); *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1308 (7th Cir. 1988); *Lumen Const.*, 780 F.2d at 697-98. That course will be followed here.

    Accordingly, this action is stayed pending final resolution of *Zahran v. Bank of Am., N.A.*, No. 09 CH 20059 (Circuit Court of Cook County, Illinois). If Bank of America prevails in the state court action, the Bank may move to lift the federal stay and immediately seek judgment against the Zahrans, as the state court judgment necessarily would preclude the Zahrans' defense

here (that the original promissory note was superseded). If the Zahrans prevail in the state court action, they may move to lift the stay and to dismiss this action, as the state court judgment would fatally undermine the premise of the Bank's federal court claim (that the original promissory note remains in force). *See Rogers v. Desiderio*, 58 F.3d 299 (7th Cir. 1995) ("It is sensible to stay proceedings until an earlier-filed case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of claim preclusion.").

January 19, 2011                                   _____
                                                              United States District Judge